# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2598-23

IN THE MATTER OF THE
LICENSE OF JONATHAN L.
FELLUS, M.D., LICENSE
NO. 25MA06616400 TO
PRACTICE MEDICINE IN
THE STATE OF NEW JERSEY.

_____

Argued September 29, 2025 – Decided October 7, 2025

Before Judges Sabatino, Natali and Walcott-Henderson.

On appeal from the New Jersey State Board of Medical Examiners, Division of Consumer Affairs, Department of Law and Public Safety.

Joseph M. Gorrell argued the cause for appellant Jonathan Fellus, M.D. (Brach Eichler, LLC, attorneys; Joseph M. Gorrell, of counsel and on the brief; Vanessa L. Coleman, on the brief).

Kevin Q. Bui, Deputy Attorney General, argued the cause for respondent State Board of Medical Examiners (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Kevin Q. Bui, on the brief).

PER CURIAM

The sole issue in this appeal is whether the Board of Medical Examiners ("BOME") acted arbitrarily and abused its discretion when it rejected the request of appellant Jonathan L. Fellus, M.D., to eliminate the "chaperone requirement" imposed on him via a consent order as a condition of his New Jersey medical license being restored. The requirement entails having a third person, known as a chaperone[1], physically present at any appointment when appellant examines or treats a female patient in New Jersey to observe his conduct. The consent order further required the chaperone(s) to submit to the BOME, every three months, written reports of appellant's professionalism with female patients. Later instruction from the BOME required the chaperones to submit the initials of every female patient whom appellant treated.

Applying a deferential scope of review, we must afford to the BOME's final agency decision, we affirm its continuation of the chaperone requirement in the circumstances presented.

We briefly summarize the key facts and procedural history. For about twelve weeks in 2008-09, appellant, then a Board-certified neurologist, had sexual encounters with a brain-damaged female patient who had recently

---

[1] The concept is now termed a "Board-mandated observer." We continue to use the term "chaperone" in this opinion, both for clarity and consistency with the parties' submissions and the BOME's rulings.

suffered a traumatic head injury in a car accident. He impregnated her, convinced her to terminate the pregnancy, and gave her money to do so. Appellant apparently was not criminally prosecuted, although he was found liable in a civil malpractice action.

In 2014, after a contested hearing, the BOME revoked appellant's license, but gave him the right to move for reinstatement after three years. Appellant thereafter applied for reinstatement in 2018.

In December 2018 appellant, who was represented by counsel, and the BOME entered into a consent order that reinstated his New Jersey medical license pursuant to three important conditions: (1) appellant continue being treated by a mental health professional; (2) appellant hire a chaperone to be present during all of his care of female patients in New Jersey; and (3) the chaperone(s) timely file compliance reports every three months with the BOME.

In February 2021, appellant's psychotherapist reported to the BOME that appellant no longer required therapeutic treatment. The BOME accordingly rescinded the therapy requirement.

Meanwhile, in 2021, the New York State Medical Board granted appellant a license to practice in that state without a chaperone or other restrictions. Appellant noted that some of his patients who reside in New Jersey have been

3

traveling to his office in New York, enabling him to avoid retaining a chaperone for those visits.[2]

In May 2021, appellant by letter requested and then formally moved in August 2022, for the BOME to remove the chaperone restriction. After an investigation and a transcribed hearing conducted in March 2023 by a subcommittee within the Board, the BOME issued a final decision rejecting his request.

Among other grounds, the BOME reasoned that appellant's wrongdoing was so severe that the public interest still requires monitoring. The BOME also faulted appellant for having spotty compliance with the chaperone reporting requirements, such as chronically late submissions and missing reports. Furthermore, the BOME expressed concerns about appellant's vagueness as to whether and when he was seeing female patients in New Jersey.

In his present appeal, appellant reiterates that he regards the continuation of the chaperone condition unwarranted and unfair. He stresses that the underlying misconduct occurred more than sixteen years ago, and that no other patient has been mistreated since. He further asserts the chaperone condition is

---

[2] Appellant had not contemporaneously advised the BOME of that New York licensure although it appears he was not required to do so.

onerous, raises costs for his patients, and prevents him from regaining Board certification in his medical specialty.

Appellant emphasizes that the State of New York has allowed him to practice there without a chaperone for the last four years. He also points to other unpublished cases in which the BOME allegedly was more lenient. He further contends the BOME relied too much on '"administrative" noncompliance, which depends on the chaperones (over whom appellant allegedly has little control) to submit timely forms.

Lastly, appellant submits that, even if this court concludes the BOME's disposition does not violate his constitutional rights, its continued insistence upon a chaperone is fundamentally unfair.

In evaluating these arguments, we first consider the statutory and regulatory framework of medical licensure in New Jersey. The BOME is one of several professional licensing boards in this State that is authorized to take disciplinary action against a licensee by the Uniform Enforcement Act ("UEA"). N.J.S.A. 45:1-14. The UEA expressly grants the BOME authority to revoke medical licenses and to reinstate them with certain conditions. N.J.S.A. 45:1-21 to -22.

The BOME is empowered to revoke licenses for a variety of reasons, including but not limited to if a licensee "[h]as engaged in professional or

5

occupational misconduct as determined by the board." N.J.S.A. 45:1-21(e). The BOME also has discretion to issue disciplinary actions other than revocation, such as ordering professionals "to secure medical or such other professional treatment as may be necessary" and to "submit to any supervision, monitoring or limitation on practice determined by the [BOME] to be necessary." N.J.S.A. 45:1-22(e), (h).

In overseeing the regulation of the medical profession, the State thus "acts as the guardian of the health and well-being of its citizens." In re Polk, 90 N.J. 550, 566 (1982). Its obligations in fulfilling this role "are paramount to the rights of the individual practitioner claiming the privilege to pursue his or her medical profession." Ibid.

Under our case law, limitations of the BOME's power to "deny, revoke or suspend a physician's medical license" or to "invoke . . . lesser sanctions" are strongly discouraged, because such limitations may "thwart the effectiveness of the [BOME's] fundamental dual purpose—to permit qualified physicians' licensure while protecting the state citizenry." In re Kim, 403 N.J. Super. 378, 387 (App. Div. 2008). Moreover, the BOME has the authority to discipline licensees for a wide array of misconduct, even when that conduct does not result in actual harm to patients. In re License Issued to Zahl, 186 N.J. 341, 354-55 (2006).

A-2598-23

We are also guided here by general principles mandating deferential appellate review of administrative agency decisions. Ordinarily, an agency's decision will be upheld "unless there is a clear showing that it is arbitrary, capricious or unreasonable or that it lacks fair support in the record." In re Hermann, 192 N.J. 19, 27-28 (2007) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). To determine whether that high bar is met, appellate courts consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995) (citing Campbell, 39 N.J. at 562).]

In applying these criteria, the agency decision is entitled to substantial judicial deference "because of the 'expertise and superior knowledge' of agencies in their specialized field." Zahl, 186 N.J. at 353 (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). A party challenging the administrative action—here Dr. Fellus—bears the burden of proving it is arbitrary and capricious. Lavezzi v. State, 219 N.J. 163, 171 (2014).

Guided by these principles, we affirm the BOME's final agency decision,

7

substantially for the sound reasons it expressed in its seventeen-page amplification dated September 16, 2024.  We add only a few comments.

As the amplification details, appellant has failed to assure compliance with the chaperone reporting requirements specified in the consent order.  There are several concerning gaps in the chronology, and multiple instances in which the chaperone report was not submitted until weeks or months after it was due. For at least two of the reports (covering the observation periods from September 2020 to December 2020, and from April 2021 to June 2021), the number of female patients observed was not disclosed, nor was it indicated that appellant had ceased treating any female patients.  In addition, the BOME noted discrepancies between statements made by appellant and his counsel, and the chaperone reports regarding the number of female patients appellant treated.

The BOME had the clear authority and administrative discretion to take into account these instances of noncompliance and discrepancies when it considered appellant's request to be relieved of the chaperone condition.  The BOME was aware of appellant's difficulties coping with the serious health problems of a member of his family, as well as the challenges he faced in beginning his own practice and arranging chaperones during the COVID-19 pandemic.  The BOME, not this court, was in the best position to assess the professional and practical facets of those issues.

A-2598-23

We do not regard appellant's noncompliance as mere "housekeeping" issues, particularly the chaperone reporting obligation. Given the severity of appellant's extremely inappropriate conduct with his former patient that led to his discipline, the BOME was justified in applying vigilance and caution. Its rejection of appellant's request for relief was neither arbitrary nor capricious. Hermann, 192 N.J. at 27-28.

That said, our affirmance of the BOME's decision on the present record should not be construed to signal to the agency that it is entitled to continue the chaperone requirement indefinitely or rigidly. Nothing prevents appellant, if he consistently maintains compliance with the reporting conditions going forward, from renewing his request to the BOME for relief.

We are unpersuaded by appellant's contention that the decision of the New York medical licensure board to allow him to practice in that state without a chaperone makes it arbitrary and capricious for New Jersey to continue to impose such a condition. The regulatory bodies in the two states are free to adopt independent approaches. Kim, 403 N.J. Super. at 388.

We also reject appellant's reliance on the "sparingly" used doctrine of fundamental fairness. Doe v. Poritz, 142 N.J. 1, 108 (1995); see also State v. Saavedra, 433 N.J. Super. 501, 529-30 (App. Div. 2013). We discern no aspects of this matter, procedurally or substantively, that rise to the level of a

fundamental injustice.

Although appellant's counsel complained to us at oral argument about not being able to call appellant's psychotherapist to testify as a witness at the BOME proceedings and other procedural limitations, those criticisms were not levied in his brief.[3] Nor does the record contain indicia of the BOME denying any specific procedural requests by appellant. Appellant testified extensively for nearly two hours before the BOME subcommittee and had abundant opportunities to explain to the members his circumstances and compliance efforts, particularly regarding the untimely submission of chaperone reports.

To the extent appellant has raised other points we have not discussed, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

---

[3] As a general rule, arguments not presented in an appellate brief may be ignored. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

A-2598-23